IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

MARTHA GARZA, )
 )
      Plaintiff, )
 )
vs. ) Case No. CIV-12-1023-D
 )
HENNIGES AUTOMOTIVE, )
 )
      Defendant. )

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 17], which is fully briefed and at issue.[1] The Court rules as follows.

**Background**

Plaintiff Martha Garza is a former employee of Defendant Henniges Automotive. Plaintiff alleges her employment was terminated in September, 2011, while she was under medical treatment for a work-related shoulder injury, and that the termination decision was motivated by retaliation for filing a workers' compensation claim and by her disability. Based on these allegations, Plaintiff asserts the following claims: (1) violation of the Oklahoma workers' compensation statute prohibiting retaliation, *see* Okla. Stat. tit. 85, § 341;[2] (2) intentional infliction of emotional distress; and (3) violation of federal and state laws prohibiting termination of employment on the basis of disability, namely, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Oklahoma's

---

[1] The Motion is supported by Defendant's opening and reply briefs [Doc. Nos. 17 and 19], and opposed by Plaintiff's response brief [Doc. No. 18].

[2] This statute has been repealed and replaced effective February 1, 2014, by the Administrative Workers' Compensation Act, Okla. Stat. tit. 85A, § 1 *et seq.*

Anti-Discrimination Act, *see* Okla. Stat. tit. 25, § 1101 *et seq.*[3] Defendant seeks summary judgment in its favor pursuant to Fed. R. Civ. P. 56 on the ground that Plaintiff cannot establish any claim.

**Standard of Decision**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record."

---

[3] The Complaint refers to the state law as an anti-handicap statute, but effective November 1, 2011, legislative amendments replaced "handicapped person" with the phrase used in federal statutes, "individual with a disability." *See* Okla. Stat. Ann. tit. 25, § 1301(4).

*See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts

Defendant manufactures rubber weatherstrip seals used in the automotive industry. Plaintiff was employed as a "Team Member" in Defendant's manufacturing facility in Frederick, Oklahoma, from July, 2005, until September, 2011. Plaintiff's work required her to trim long rubber pieces, toss the rubber strips onto a rack taller than her head, and move full racks to another area of the facility. The essential functions of the Team Member position were listed in a written "Job Function Analysis" that included the following physical requirements: "Medium exertion for lifting/ pushing/pulling;" "Lifting lightweight parts constantly to head high or higher position;" and "Constant standing." *See* Def.'s Mot. Summ. J., Ex. 3 [Doc. No. 17-3] at 2. As a Team Member, Plaintiff performed the job duties stated in the Job Function Analysis, which required her to regularly lift more than 5 pounds and use both of her arms. Plaintiff has testified that she considered the exertion level of her lifting, pushing, and pulling functions to be "heavy," and she estimated that some of the rubber parts she had to toss up onto the racks weighed approximately 15 to 20 pounds. *See* Garza Dep.17:1-3, 21:3-22:1.

On August 1, 2010, Plaintiff injured her right shoulder while performing her Team Member duties. She received a diagnosis of rotator cuff tear, and subsequently underwent two surgical procedures and physical therapy. Plaintiff did not return to work for Defendant after her injury. She has sought other employment without success and has not worked in any capacity since that time.

On September 6, 2011, a treating physician, Charles Funderburk, M.D., evaluated Plaintiff and concluded she had reached maximum medical improvement. Dr. Funderburk issued permanent work restrictions that included no reaching above chest-height, no pulling, and no lifting more than 5 pounds. These restrictions prohibited Plaintiff from performing the Team Member job by herself.[4] The only essential function of the position that Plaintiff could still perform was the trimming work, and other employees would have needed to perform other job duties of a Team Member.

On September 7, 2011, Defendant's human resources manager, Suzanne Wynn, was informed of Plaintiff's permanent work restrictions, and she asked the operations manager, Rose Danna, whether Defendant had any job position that Plaintiff could perform consistent with these restrictions. In September, 2011, Defendant had only two other categories of positions at the same pay grade as Team Member – custodian and "Material Handler;" all other positions were at a higher pay grade and required a higher skill set. In September, 2011, there were no vacant job positions available as either a custodian or a Material Handler. After assessing Defendant's needs, Ms. Danna informed Ms. Wynn there were no available jobs consistent with Plaintiff's permanent restrictions.

Also on September 7, 2011, Ms. Wynn met with Plaintiff and informed her that it did not appear Defendant had any available positions that would accommodate the permanent work restrictions assigned by Dr. Funderburk. Ms. Wynn asked Plaintiff if she was aware of any positions she thought she could perform, and Plaintiff responded negatively. During discovery, Plaintiff

---

[4] Plaintiff attempts to create a factual dispute by referring to her own deposition testimony that she "believed" she could return to her job with these work restrictions and "felt" she could do the work. *See* Garza Dep. 38:19-25. However, a plaintiff's own subjective opinion that she could perform a job is insufficient to create a genuine factual issue. *See White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995). Further, Plaintiff admitted in her testimony that she could not have done the Team Member job by herself, and could not have performed all the required tasks due to her physical limitations. *See id.* 26:19-27:25, 39:14-17, 67:1-23.

testified that she was not aware of a job that she could do, except she believed Defendant should find some type of job for her, "like sit in a office [sic], do something, you know, easy, where I can be able to do it." *See* Garza Dep. 41:12-16. Ms. Wynn concluded the September 7 meeting by telling Plaintiff that Defendant would continue to look for a position for Plaintiff and would call her if one was found. On September 12, 2011, Ms. Wynn made the decision to terminate Plaintiff's employment because there were no vacant positions compatible with Plaintiff's permanent work restrictions, and Ms. Wynn informed Plaintiff of the decision by telephone.

After Plaintiff's termination, Defendant continued to process Plaintiff's claim for workers' compensation benefits. In December, 2011, Plaintiff received an independent medical evaluation in connection with the claim. The examining physician concluded that Plaintiff's permanent physical limitations and loss of function resulting from her work-related injury prevented Plaintiff from performing her prior job duties, but that she was an excellent candidate for vocational rehabilitation to train her for a suitable job consistent with her limitations. Also, Plaintiff received an independent medical evaluation regarding the extent of any psychological overlay from her work-related injury, and was determined to be suffering from a depressive disorder caused by the injury. The workers' compensation case resulted in Plaintiff's receipt of a monetary award and a permanent partial disability rating.

Plaintiff filed an administrative complaint alleging disability discrimination in January, 2012, and received notice from the EEOC of her right to sue on June 20, 2012. However, Plaintiff has voiced no complaints about how Defendant handled her workers' compensation case or how she was treated by her supervisor or Ms. Wynn; Plaintiff does not claim that any employee of Defendant acted in an offensive manner. This suit was timely filed on September 13, 2012.

**Discussion**

**A.     Intentional Infliction of Emotional Distress**

To prevail on a claim of intentional infliction of emotional distress under Oklahoma law, a plaintiff must show: "(1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe." *See Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To satisfy the second element, the defendant's conduct must be so extreme and outrageous as to be "beyond all possible bounds of decency" in the setting in which it occurred, or "utterly intolerable in a civilized community." *See Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986); *see also Welton*, 49 P.3d at 735; *Kraszewski v. Baptist Medical Center of Okla., Inc*., 916 P.2d 241, 248 (Okla. 1996). "In general, a plaintiff must prove that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" *Welton*, 49 P.3d at 735.

In this case, Plaintiff has not come forward with any facts that suggest the level of extreme and outrageous conduct required to make out this tort claim. Plaintiff relies solely on the termination of her employment due to her work-related injury, and evidence that she suffered emotional distress as a result of her job loss. The fact that Defendant did not find another job for Plaintiff after she was unable to continue as a Team Member simply would not cause an expression of outrage by an average member of the community. On the record presented, the Court finds that Plaintiff has failed to identify sufficient facts, even if accepted as true and viewed most favorably to her, to permit a finding of extreme and outrageous conduct by Defendant.

Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

**B.      Discriminatory Discharge Claim**

To establish a *prima facie* case of discrimination under the ADA,[5] "a plaintiff must show: (1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered discrimination on the basis of her disability." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261-62 (10th Cir. 2009); *see Koessel v. Sublette County Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013) (citing *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1086 (10th Cir. 2008)).  The record in this case is clear that Plaintiff cannot satisfy her burden to show she was qualified for the Team Member job after her injury without an accommodation; she was physically unable to perform all of the essential functions of the position.  Plaintiff's ability to establish a *prima facie* case therefore hinges on proof of Defendant's failure to provide a reasonable accommodation.

"[A] plaintiff carries the burden of demonstrating the existence of a facially reasonable accommodation." *Hennagir*, 587 F.3d at 1264; *see U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, [or] acquisition or modification of equipment or devices." *See* 42 U.S.C. § 12111(9)(B).  "The idea of accommodation is to enable an employee to perform the essential functions of [her] job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job." *Hennagir*, 587 F.3d at 1264 (internal quotation omitted).

---

[5] Defendant contends that Plaintiff's federal and state disability laws are co-extensive and the same elements of proof are required for both claims. *See* Def.'s Mot. Summ. J. [Doc. No. 17] at 17. Plaintiff does not disagree with this contention or provide any authority for different standards of proof. Therefore, the Court finds no basis in the record to question Defendant's position.

Plaintiff does not identify in her summary judgment materials any accommodation that would have permitted her to return to work with Defendant. She argues simply that she "wanted to continue working in her assigned position, and requested Defendant to provide her with accommodation, which was denied." *See* Pl.'s Resp. Br. [Doc. No. 18] at 15. Plaintiff states no facts to show that a modification of her Team Member job would have permitted her to perform its essential functions, or that reassignment to another job was available. Accordingly, the Court finds that Plaintiff has failed to demonstrate a genuine factual dispute regarding the second element of her *prima facie* case, and that Plaintiff cannot establish a necessary element of her disability discrimination claim.

Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim of discriminatory discharge on the basis of disability.

**C.     Retaliatory Discharge Claim**

Plaintiff claims the protection of an Oklahoma workers' compensation statute that prohibits the termination of an employee for filing a workers' compensation claim or instituting a proceeding. *See* Okla. Stat. tit. 85, § 341(A). In its Motion, Defendant asserts that Plaintiff cannot establish a retaliatory discharge claim based on a provision that expressly permits termination of an employee who is unable to perform his or her job duties after suffering an on-the-job injury.

The Oklahoma Supreme Court has adopted a burden-shifting approach to proof of a retaliatory discharge, workers' compensation claim similar to the analysis applied to federal discrimination claims. *See Buckner v. General Motors Corp.*, 760 P.2d 803, 806-07 (Okla. 1988). To establish a *prima facie* case, Plaintiff "must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted . . . proceedings under the Act,

8

and *consequent* termination of employment." *Id*. at 806 (emphasis in original). "In order to establish a consequent termination under Oklahoma law, a plaintiff must produce evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation for exercising her statutory rights." *Blackwell v. Shelter Mut. Ins. Co*., 109 F.3d 1550, 1554 (10th Cir. 1997) (citing *Wallace v. Halliburton Co*., 850 P.2d 1056, 1058 (Okla. 1993), and *Taylor v. Cache Creek Nursing Ctrs.*, 891 P.2d 607, 610 (Okla. Civ. App. 1994); footnote omitted).

In this case, Plaintiff relies solely on a temporal proximity between notice of her permanent work restrictions and her termination to establish a causal connection between her workers' compensation injury and her discharge from employment. Assuming these facts are sufficient to establish a consequent termination, which is far from clear,[6] the undisputed fact that Plaintiff was physically unable to perform the job duties of her position as a Team Member would constitute a legitimate, non-retaliatory reason for her termination. *See Buckner*, 760 P.2d at 806-07; Okla. Stat. tit. 85, § 341(C) (authorizing the discharge of "any employee who is determined to be physically unable to perform assigned duties" after the "employee's period of temporary total disability has ended"); *see also Keddington v. City of Bartlesville*, 42 P.3d 293, 298 (Okla. Civ. App. 2001) (holding that "once the employee's TTD healing period has ended, and the employee is determined to suffer some permanent physical disability which prevents the discharge of assigned duties for the employer, the employer bears no § [341] liability for then terminating the employee under [§ 341(C)]" ) (footnote omitted).

---

[6] Defendant had received notice of Plaintiff's medical treatment for an on-the-job injury long before receiving her permanent work restrictions. The Oklahoma Supreme Court has found an insufficient connection based solely on temporal proximity of six weeks. *See Thompson v. Medley Material Handling, Inc*., 732 P.2d 461, 464 (Okla. 1987).

9

Because Defendant has satisfied its burden to produce credible evidence of a non-retaliatory explanation for Plaintiff's discharge, the burden of persuasion lies with Plaintiff to establish the reason given for termination was pretextual. "The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Buckner*, 760 P.2d at 807. In *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1059 (Okla. 1993), on which Plaintiff relies, the employee introduced evidence that the employer encouraged employees to file work-related injuries under its health insurance rather than workers' compensation, that an injured employee's supervisor got mad when the employee said he was going to file a workers' compensation claim, that less-qualified employees who had not filed workers' compensation claims were retained, and that the employer had a pattern of terminating employees who filed workers' compensation claims. No such evidence is suggested here.

Thus, if Plaintiff can establish a *prima facie* case, the Court finds that Plaintiff's retaliatory termination claim fails because she has presented no facts to suggest that Defendant's stated reason for her termination – her inability to return to work as a Team Member and a lack of other work – was pretextual. Plaintiff does not identify any fact that would undermine Defendant's non-retaliatory reason for her termination or otherwise demonstrate pretext. Accordingly, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of facts regarding her retaliatory termination claim. Therefore, Defendant is entitled to summary judgment on this claim as a matter of law.

**Conclusion**

For these reasons, the Court finds that Defendant is entitled to summary judgment on all claims asserted in the Complaint.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 17] is GRANTED. Defendant is entitled to summary judgment on all Plaintiff's claims. Judgment shall be entered accordingly.

IT IS SO ORDERED this 30th day of December, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE